# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MODERN TRADE COMMUNICATIONS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 10 C 5380 |
| | ) |
| PSMJ RESOURCES, INC. AND OSER | ) Judge Rebecca R. Pallmeyer |
| COMMUNICATIONS GROUP, INC. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Modern Trade Communications, Inc., an Illinois-based magazine publisher, claims rights in the trademark, *Metal Construction News*—the title of a trade magazine that Plaintiff has distributed to attendees of the Metal Construction Association's annual "Metalcon International" trade show since 1991. The mark is unregistered, but Plaintiff claims it is well-recognized. Defendant PSMJ Resources, Inc., a Massachusetts-based consulting firm, produces the trade show pursuant to an agreement with the Metal Construction Association. In this lawsuit, Plaintiff asserts that Defendant PSMJ wrongfully authorized Defendant Oser Communications Group, Inc., an Arizona-based magazine publisher, to distribute a magazine entitled *Metal Daily News* at the Metalcon trade show in October 2010. Plaintiff alleges that Defendant Oser's trade magazine is likely to cause substantial confusion in the marketplace, and charges Oser with trademark infringement, unfair competition, and unlawful appropriation of Plaintiff's trademark under the Lanham Act, 15 U.S.C. § 1125(a) (Counts I & II). Plaintiff charges Defendant PSMJ with contributory trademark infringement and unfair competition under the Lanham Act (Count III), breach of the implied covenant of good faith and fair dealing (Count VII), and promissory estoppel (Count IV). Lastly, Plaintiff has alleged several claims against both Defendants: unfair business practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* (Count IV); deceptive trade practices under the Illinois Uniform Deceptive Trade

Practices Act, 815 ILCS 510/1, *et seq.* (Count V); common law trademark infringement and unfair competition (Count VI), and tortious interference with prospective business advantage (Count VIII).

Defendants have moved to dismiss Plaintiff's claims for lack of personal jurisdiction and failure to state a claim pursuant to FED. R. CIV. P. 12(b)(2), (6). Plaintiff has moved to file an amended complaint, alleging claims nearly identical to those presented in its initial complaint, and adding a claim for breach of contract against Defendant PSMJ. For the reasons stated below, the court grants Defendants' motions to dismiss for lack of personal jurisdiction and denies Plaintiff leave to file its proposed amended complaint.

## **FACTUAL BACKGROUND**

Plaintiff Modern Trade Communications ("Plaintiff" or "Modern Trade") is a magazine publishing company based in Skokie, Illinois. (Compl. ¶ 2.) Plaintiff has published a monthly magazine, *Metal Construction News*, for over 30 years. (*Id.* ¶ 8.) According to Plaintiff, in 1983, Modern Trade's founders, John Lawrence and Sam Milnark, helped organize the Metal Construction Association ("MCA"), a trade association for manufacturers and suppliers of metal products used in construction projects. (*Id.* ¶ 9.) In 1991, the MCA established "Metalcon International," a trade show for the metal construction industry featuring various exhibitions and seminars.[1] (*Id.*) For the first show, Plaintiff published a complimentary exhibition magazine entitled *Metal Construction News: The Official Metalcon International Show Guide*, which provided information to show attendees on exhibitors, booth locations, and the schedule of events, and included advertisements from metal construction industry companies. Plaintiff claims that it has published an "Official Show Guide" for every Metalcon trade show in October since 1991, in addition to the non-Metalcon affiliated version of the magazine that it publishes every month.

In November 1998, the MCA entered into an agreement with Defendant PSMJ Resources,

---

[1] The trade show is held in a different city each year.

Inc. ("PSMJ"), a Massachusetts-based consulting firm, for production of the Metalcon show. (*Id.* ¶ 11.) The agreements states, in pertinent part:

> For each Metalcon International show produced under this agreement, Modern Trade Communications, in coordination with PSMJ, may produce and distribute an exhibition magazine to be distributed to all attendees and exhibitors at the show. In the event that Modern Trade Communications does not produce and distribute an exhibition magazine, then PSMJ may produce and distribute the exhibition magazine so long as the content, image, quantity produced, number mailed in advance and size is at least equal to whatever exhibition magazine has been produced for the prior two Metalcon International shows.

(*Id.* ¶¶ 12-13.) According to Plaintiff, over the past ten years, Plaintiff's *Metal Construction News* has acquired a secondary meaning in the market and has become a distinctive, well-recognized publication by members of the MCA. (*Id.* ¶ 16.)

Defendant Oser Communications, Inc. ("Oser") also publishes trade magazines. In June 2010, Oser entered into an agreement with PSMJ under which Oser would publish a "show daily," *Metal Daily News: An Official Publication*, for the October 2010 Metalcon show in Las Vegas. (Def. PSMJ's Mot. to Dismiss at 2.) According to Defendant PSMJ, a "show daily," unlike an exhibition magazine, is distributed overnight to the hotel rooms of trade show attendees, and contains news summarizing seminars and other events from the previous day.[2] (*Id.*) Plaintiff insists that Defendant Oser's publication is in direct competition with Modern Trade's exhibition magazine, and that Oser could mislead MCA members into believing that Modern Trade is no longer the publisher of Metalcon's "Official Show Guide" because Oser's show daily labels itself "An Official Publication."

In July 2010, Plaintiff's counsel issued a cease and desist letter to Defendant PSMJ, asserting Modern Trade's trademark rights in the title, *Metal Construction News*, and claiming that PSMJ's apparent authorization of Oser's publication conflicts with the agreement between PSMJ

---

[2] It appears that *Metal Daily News* is not only distributed to the hotel rooms of the trade show attendees at night, but also offered to attendees in the trade show convention hall during the day. (*See Metal Daily News: An Official Publication*, Ex. B to Compl.; Oser Letter of 7/26/2010, Ex. C to Compl.)

and the MCA. (Letter from Kuczma to Kilcoyne of 7/30/10, Ex. D to Compl.) One month later, Plaintiff sent a similar letter to Defendant Oser, warning that Oser's use of the name *Metal Daily News* for a publication that covers the same industry as Modern Trade's magazine is likely to cause substantial confusion in the marketplace. (Letter from Kuczma to Oser of 8/6/10, Ex. F to Compl.) On August 10, 2010, PSMJ responded to Plaintiff's letter, rejecting Plaintiff's reliance on the 1998 agreement between PSMJ and the MCA on the ground that Modern Trade was not a party to that agreement, and noting, further, that the agreement does not designate Modern Trade as the exclusive publisher of Metalcon exhibition materials. (Letter from Belt to Luczma of 8/10/10, Ex. E to Compl.) Believing that Defendant Oser's adoption of the magazine title *Metal Daily News* and Defendant PSMJ's authorization of Defendant Oser's actions constituted infringement of Plaintiff's rights, Plaintiff brought this suit against Defendants on August 25, 2010.

## **ANALYSIS**

Defendants have moved to dismiss Plaintiff's complaint under FED. R. CIV. P. 12(b)(2) for lack of personal jurisdiction and under 12(b)(6) for failure to state a claim. While a complaint "need not include facts alleging personal jurisdiction," once the defendant moves to dismiss under 12(b)(2), "plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Foundation v. Sanofi-Synthelabo*, S.A., 338 F.3d 773, 782 (7th Cir. 2003) (citations omitted); *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 423-24 (citations omitted). In order to withstand a motion to dismiss under 12(b)(6), a plaintiff's complaint need not set forth "detailed factual allegations," but it must plead facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**I.    Personal Jurisdiction**

Modern Trade asserts claims arising under both the federal Lanham Act and state law. Because the Lanham Act does not authorize nationwide service of process, this court may only exercise jurisdiction over Defendants PSMJ and Oser if authorized by Illinois law and the

Fourteenth Amendment's Due Process Clause. *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011). The Illinois long-arm statute permits courts to exercise personal jurisdiction over a non-resident defendant to the full extent permitted under the Illinois and U.S. Constitution. 735 ILCS 5/2–209(c); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997); *Klump v. Duffus*, 71 F.3d 1368, 1371 n.4 (7th Cir. 1995)) (observing that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction."). The central inquiry under the Due Process Clause is whether the defendants have sufficient "minimum contacts" with Illinois such that requiring them to defend against a lawsuit in the state "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

The Supreme Court has identified two types of personal jurisdiction: general and specific. General jurisdiction is permitted when the defendant's contacts with the forum state are so "continuous and systematic" that a defendant may be sued in the forum "regardless of the subject matter of the litigation." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984); *Purdue Research Foundation*, 338 F.3d at 787 (citing *Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996)). When a defendant's contacts with the forum state are more limited, the court may exercise specific jurisdiction over the defendant if "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Modern Trade contends that this court may exercise both general and specific jurisdiction over Defendants.

**A.     Defendant PSMJ**

Defendant PSMJ is a Massachusetts corporation with its principal place of business in

Newton, Massachusetts. (Compl. ¶ 3.) It maintains no offices or property in Illinois, and none of its employees are located in Illinois. (Kilcoyne Decl. ¶ 5.) PSMJ operates a public website for informational purposes, and its viewers may also access the Metalcon International trade show website through a link on PSMJ's site.[3] According to PSMJ, approximately 90% of the revenue PSMJ generates from the Metalcon trade show is through the sale of exhibition booths, and the remaining 10% of revenue is generated from registration fees. (Kilcoyne Decl. ¶ 3.) PSMJ does not provide information concerning the percentage of its revenue from the Metalcon show that is derived from Illinois residents, but states that in 2009, companies and residents from Illinois accounted for approximately 3% of PSMJ's total revenue from the Metalcon show in Florida, and 17 out of 269 of the show exhibitors were from Illinois.[4] (*Id.*) Plaintiff contends that PSMJ downplays the significance of its contacts with Illinois, and points to several additional factors that Plaintiff argues should support a claim of personal jurisdiction over PSMJ: (1) PSMJ produced six business management seminars (unrelated to the Metalcon show) in Chicago in 2010; (2) PSMJ offers its webinars and publications for direct purchase on its website; and (3) PSMJ entered into a contract with MCA, an Illinois corporation, to produce the annual Metalcon trade show.

### 1. General Jurisdiction

Courts may evaluate several factors in determining whether a non-resident defendant's contacts with Illinois are sufficiently "continuous and systematic" to subject it to general jurisdiction here: (1) how often the defendant conducts business in Illinois; (2) whether the defendant maintains offices or employees in Illinois; (3) whether the defendant sends agents into Illinois to solicit business; and (4) whether the defendant has designated an agent for service of process in Illinois. *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd*, 304 F. Supp. 2d 1018, 1024 (N.D. Ill. 2004)

---

[3]  *See* www.psmj.com; www.metalcon.com (last visited Aug. 18, 2011).

[4]  PSMJ estimates that its 2009 figure is "generally indicative" of its revenue for each Metalcon trade show over the past 10 years. (Kilcoyne Decl. ¶ 3.)

(citation omitted). These factors weigh against a finding that PSMJ is subject to general jurisdiction in this court. PSMJ maintains no offices or employees in Illinois, and there is no evidence that PSMJ has designated an agent for service of process in this state. PSMJ does maintain an interactive website and could presumably conduct sales of its products with Illinois customers online, but Plaintiff has not alleged that PSMJ generates any revenue from Illinois residents through its website, and the mere existence of a public interactive website is not sufficient to establish general jurisdiction. *See Richter v. INSTAR Enterprises Intern., Inc.*, 594 F. Supp. 2d 1000, 1013 (N.D. Ill. 2009) (denying general jurisdiction where defendant operated an interactive website offering allegedly infringing artwork for sale, but plaintiff presented no evidence that defendant had made sales to Illinois residents); *uBID, Inc.*, 623 F.3d at 426 (denying general jurisdiction where company's contacts were limited to hosting websites accessible from Illinois). PSMJ does receive revenue from Illinois residents who attend the Metalcon shows, but if "a defendant's sales in a state represent both a small percentage of a defendant's total sales and a small volume of sales over all, its contact with the forum state cannot be said to be substantial." *Richter*, 594 F. Supp. 2d at 1007, *and cases cited therein*. Neither party has stated the overall average number of sales PSMJ generates from Illinois residents attending the annual Metalcon shows, but PSMJ has stated that in 2009, only 3% of its revenue from the Metalcon show came from Illinois attendees. All of these factors lead the court to conclude that PSMJ is not subject to general jurisdiction in Illinois.

    **2.**    **Specific Jurisdiction**

The central injury for specific jurisdiction is: has PSMJ "purposely exploited" the market in Illinois? *be2 LLC*, 642 F.3d at 558, *and cased cited therein*. In other words, is it "fair and reasonable" to call PSMJ into Illinois to answer Plaintiff's claims? *uBID, Inc.*, 623 F.3d at 426 (*citing Int'l Shoe*, 326 U.S. at 217). Plaintiff contends that PSMJ has purposely availed itself of the laws of Illinois by entering into a contract with the MCA, an Illinois resident. Though "an out-of-state party's contract with an in-state party is not enough alone to establish the requisite minimum

7

contacts," Plaintiff is correct to observe that the parties' "'prior negotiations and contemplated future consequences, along with the terms of the contact and the parties' actual course of dealing' may indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *Hyatt Intern. Corp.*, 302 F.3d at 716. In this case, Plaintiff is not a party to the contract between the MCA and PSMJ, and the parties have not offered the actual terms of the agreement, nor stated where it was formulated or where the parties contemplated PSMJ's performance of its obligations under the contract; notably, the location of the Metalcon trade show changes yearly. *See Asset Allocation and Management Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 569-70 (7th Cir. 1989) (discussing factors to balance in assessing whether plaintiff's claims arose from defendant's "transaction of business within" Illinois within context of breach of contract claim). The court therefore agrees with PSMJ that its relationship with MCA alone is not sufficient to subject it to personal jurisdiction in Illinois.

Nor is the court persuaded that PSMJ purposefully directed its business activities at Illinois residents or deliberately targeted the Illinois market. Plaintiff suggests PSMJ has sufficient minimum contacts with Illinois because PSMJ entered Illinois in October 2002 to produce the Metalcon trade show in Rosemont, Illinois. (Ex. 28 to Abrams Decl. in Supp. of Pl.'s Mem. in Opp'n. to Def. PSMJ's Mot. to Dismiss for Lack of Personal Jurisdiction.) PSMJ notes, however, that the Metalcon trade show location changes every year and contends that the allegedly infringing magazine at issue, *Metal Daily News*, was not specifically directed to Illinois residents because it was only distributed at the trade show in Las Vegas in October 2010. PSMJ's citation to *C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837 (N.D. Ill. 2009) is perhaps most instructive here. In that case, CSB, a New York seller of household goods, brought suit against Urban Trend, a Hong Kong seller of novelty items, after Urban Trend sold a knife holder in the same design and color as one sold by CSB. CSB asserted that the court should exercise personal jurisdiction over the defendant because Urban Trend displayed the allegedly infringing product at

8

a trade show in Illinois. The district court disagreed. The court acknowledged that Urban Trend did choose to market the product in Illinois after it had been warned not to sell it (and thus could have reasonably anticipated being subject to a lawsuit). Still, Urban Trend did not actually sell the product at the show; Chicago was merely a fortuitous location for the show; and CSB failed to demonstrate that Urban Trend specifically targeted Illinois residents at the show. *Id.* at 853. In this case, PSMJ produced the Illinois Metalcon show in 2002, but Plaintiff has not alleged that PSMJ allowed Defendant Oser to distribute *Metal Daily News*, at that Chicago trade show. In fact, Defendant Oser's magazine did not exist at that time.[5] In any event, Plaintiff has not alleged that PSMJ specifically targeted Illinois residents at the trade show or even produced the trade show in Illinois to promote its business in the forum state; Plaintiff concedes that the show is aimed at an international audience.

In any event, in order to establish specific jurisdiction, "it is essential not only that the defendant have minimum contacts with the forum state but also that the plaintiff's claims against the defendant '"arise out of or relate to' those contacts." *uBID, Inc.*, 623 F.3d at 429 (quoting *Burger King*, 471 U.S. at 472-73 (citations omitted)). Modern Trade's cause of action against PSMJ do not arise out of the Metalcon trade show in Illinois, nor did it arise out of PSMJ's contacts with Illinois in general—it stems from PSMJ's alleged authorization of Defendant Oser's distribution of a magazine at the 2010 Metalcon show in Las Vegas.

**B.     Defendant Oser**

Defendant Oser Communications Group, Inc. ("Oser") is an Arizona corporation with its principal place of business in Tucson, Arizona. (Compl. ¶ 4.) Oser maintains no offices, employees, or property in Illinois, but it does distribute various publications at different trade shows at McCormick Place in Chicago, Illinois, approximately "two or three" times per year. (Baumann

---

[5]     For all that the record reveals, *Metal Daily News* first emerged on the market at the 2010 Metalcon show in Las Vegas and has not been reproduced since that time.

Decl. ¶¶ 6-7, 9.) Oser has not identified all of its publications, but states that 1,869 companies advertise in all of its publications combined, and 72 of those advertisers are located in Illinois. (*Id.* ¶ 8.) Within the *Metal Daily News* magazine at issue, only one of the 30 advertisers is an Illinois resident. (*Id.* ¶ 14.) Oser operates a public website, which it claims is "generally for passive information purposes," and does not advertise or mention either *Metal Daily News* or the Metalcon show. (*Id.* ¶ 16.) A brief search of the company's website indicates, however, that Oser does in fact offer a free downloadable PDF version of its *Metal Daily News* from the October 2010 Metalcon show.[6] Neither Oser nor Plaintiff has stated what percentage of Oser's revenue generated from *Metal Daily News* is from Illinois residents.

### 1. General Jurisdiction

As explained above, the standard for exercising general jurisdiction over a non-resident defendant is challenging—the defendant's contacts with the forum state must be so "continuous and systematic" that the defendant would be subject to jurisdiction "in any action, even if the action is unrelated to those contacts." *Helicopteros*, 466 U.S. at 416; *Tamburo*, 601 F.3d at 701. Plaintiff argues that Oser is subject to general jurisdiction because it regularly attends trade shows in Chicago, and, thus, regularly generates revenue from customers in Illinois. Yet courts have repeatedly held that mere "attendance at trade shows in the forum state is insufficient to establish general jurisdiction.*" CF Industries v. Ben-Trei, Ltd.*, No. 09 C 1353, 2009 WL 2765972, *4 (N.D. Ill. Aug., 27, 2009), *and cases cited therein*. In *CF Industries*, an Illinois fertilizer distributor sued an Oklahoma corporation after it failed to pay its balances on several orders of fertilizer. *Id.* at *1. The plaintiff argued that the defendant was subject to general personal jurisdiction in Illinois because it conducted business with Illinois vendors, sent employees to an annual trade association convention in Illinois, and leased railcars from an Illinois company to transport its product. *Id.* at *4.

---

[6] *See* www.oser.com/onlinepubs.html (last visited Aug. 18, 2011).

The district court concluded that the defendant's attendance at the annual trade show in Illinois was insufficient to establish personal jurisdiction and observed that "even though [the defendant's] representatives were soliciting potential Illinois customers at these trade shows, mere solicitation of customers in the forum state is also insufficient to establish personal jurisdiction." *Id.*, *and cases cited therein*. Similarly here, Oser's attendance at Illinois trade shows two or three times a year does not constitute "systematic contacts" with Illinois that are sufficiently extensive to establish general jurisdiction.

### 2. Specific Jurisdiction

In its memorandum in opposition to Oser's motion to dismiss, Plaintiff argues that Defendant Oser has infringed Plaintiff's trademark by selling advertising space to an Illinois business in its *Metal Daily News* magazine. Relying on the so-called "express aiming test," Plaintiff insists that Oser is therefore subject to specific personal jurisdiction in Illinois because its tortious conduct caused Plaintiff to suffer harm in Illinois. The Seventh Circuit's recent explanation of the test in a trademark case, *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440 (7th Cir. 2010), is particularly instructive here. In that case, the plaintiff, a Chicago company that provided anesthesia services to medical offices, sued a competitor in Houston for registering a domain name similar to the plaintiff's trademark. As in this case, the plaintiff there argued that the defendant was subject to personal jurisdiction in Illinois because the defendant's activities in Texas were "expressly aimed" at causing harm to the plaintiff in Illinois. *Id.* at 442. The Court of Appeals explained that the theory upon which the plaintiff relied derived from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 789-90 (1984), which held that a California district court could properly exercise jurisdiction over Florida defendants "based on the 'effects' of their Florida conduct in California." *Id.* at 789 (citations omitted). In *Calder*, Florida residents were accused of writing a libelous story about a California resident, and the Supreme Court found the following facts especially relevant: "[t]he article was drawn from

11

California sources, and the brunt of the harm, in terms of both respondent's emotional distress and the injury to her professional reputation, was suffered in California." *Id.* at 788-89.

In *Mobile Anesthesiologists Chicago*, the Seventh Circuit observed that Supreme Court's decision in *Calder* "was tied closely to its facts," and that "*Calder*'s 'express aiming' requirement . . . [is] merely one means of satisfying the traditional due process standard set out in *International Shoe* and its familiar progeny, not an independent path to jurisdiction that allowed a defendant to avoid 'minimum contacts' altogether." 623 F.3d at 444-45 (citing *Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985)). The court rejected any notion that "*Calder* meant 'any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff." *Id.* (citing *Wallace*, 778 F.2d at 394.) As a result, the Court of Appeals was unpersuaded by the plaintiff's contention that the defendant "expressly aimed" its conduct at Illinois. The court observed that the Houston company did not "purposefully direct" its activities at Illinois, it "formed no contracts in Illinois and had no physical presence in the state." *Id.* at 444. Moreover, the court was not satisfied that the defendant's website, which was accessible to residents of the forum state and allegedly caused harm, was evidence that the defendant "took express aim at Illinois." *Id.* at 446.

In this case, Plaintiff claims that the combined effect of Defendant Oser's sale of advertising space in *Metal Daily News* to an Illinois company and its interactive website constitute persuasive evidence that Oser has sufficient minimum contacts for the court to exercise personal jurisdiction. The court is not convinced that either factor is an adequate ground upon which the court could infer the defendant expressly aimed its services at the forum state. Plaintiff argues that Oser used the infringing *Metal Daily News* name for its publication to deliberately divert advertising opportunities from Plaintiff, but Plaintiff offers no factual allegations to support this contention. The court in *Primack v. Pearl B. Polto, Inc.*, No. 08-cv-4539, 2010 WL 2721880 (N.D. Ill. July 8, 2010), faced a similar factual circumstance: a plaintiff sued a company that operated a website advertising and

12

distributing copies of a book that allegedly infringed on the plaintiff's trademark. The district court rejected the plaintiff's attempt to use the "expressly aimed" test, and observed that the test allows a court to exert personal jurisdiction over a defendant only if the defendant "(i) commits intentionally tortious actions; (ii) which are expressly aimed at the forum state; (iii) which cause harm to the plaintiff in the forum state which the defendant knows is likely to be suffered." *Id.* at \*5 (citing *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 835 (N.D. Ill. 2000) (citing *Calder*, 465 U.S. 783)). The court found no evidence that the defendant knew of the plaintiff's mark or intended to harm the plaintiff in Illinois. *Id.* at \*5-6 (noting that "harm by itself is insufficient; targeted harm is required."). Modern Trade has not registered the trademark at issue in this case, and there is no evidence that Oser knew of Modern Trade's purported mark when it sold the advertising space in its magazine to an Illinois resident.

The court is similarly unpersuaded by Plaintiff's assertion that Oser's website provides a sufficient basis for personal jurisdiction. Plaintiff's reliance on *Illinois v. Hemi Group, LLC*, 622 F.3d 754, 760 (7th Cir. 2010) to support its claim is misplaced. In that case, the State of Illinois sued a New Mexico-based company for selling cigarettes to Illinois residents through its websites and for failing to report the sales. The Seventh Circuit upheld the district court's exercise of personal jurisdiction because the defendant "set up an expansive, sophisticated commercial venture online," and sold and shipped cigarettes to Illinois customers. *Id.* at 760. The court did observe, however, that "[c]ourts should be careful in resolving questions in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" *Id. Hemi Group* is readily distinguishable from this case because Oser's website offers its publications (including *Metal Daily News*) to view free of charge—a far stretch from the profitable online business model the defendant established in *Hemi Group*. *See also uBID v. GoDaddy Group*, 623 F.3d 421 (7th Cir 2010) (where online advertising campaign produced

13

hundreds of thousands of customers in Illinois). Moreover, apart from the accessibility of Oser's website in Illinois, Plaintiff has made no allegations that Oser somehow deliberated targeted or exploited the market in Illinois.

Lastly, Plaintiff has failed to sufficient allege that his injury "arose from or related to" Oser's contacts in Illinois. *See Burger King Corp.*, 471 U.S. at 472. Plaintiff alleged injury arose from Oser's distribution of its magazine in Las Vegas in 2010, not from any activity Oser conducted in Illinois. Plaintiff's claim hinges on the allegation that Oser's use of the title *Metal Daily News* is likely to cause confusion with Plaintiff's *Metal Construction News*, but Plaintiff has not alleged what proportion of Illinois residents were reached through Oser's distribution of its magazine in Las Vegas. The court concludes that Oser does not have sufficient contacts with the forum for the court to exert personal jurisdiction

## II.    Amended Complaint

After Defendants filed their motions to dismiss for lack of personal jurisdiction and failure to state a claim, Plaintiff filed a motion for leave to file an amended complaint. Defendants contend that this motion should be denied because Plaintiff has not alleged any new facts that would alter the jurisdictional outcome in this case. The court agrees. Plaintiff's proposed amendments to its complaint include: (1) adding a breach of contract claim against Defendant PSMJ; (2) asserting that the court has diversity jurisdiction over the action; and (3) referencing a letter sent by Defendant PSMJ to Plaintiff for its promissory estoppel claim. None of these proposed amendments address the jurisdictional concerns that the court has outlined above. As a result, Plaintiff's motion must be denied as futile. *See Farmer v. DirectSat USA, LLC*, No. 08-cv-3962, 2010 WL 380697, at *9 (N.D. Ill. Jan.28, 2010) (finding plaintiff's motion to file amended complaint "futile" where it could not withstand a motion to dismiss for lack of personal jurisdiction).

Plaintiff is free to reassert its claims in a court (or courts) that have personal jurisdiction over Defendants, but the court notes a caution: in this lawsuit, Plaintiff contends that Defendant Oser's

14

adoption of the magazine title *Metal Daily News* and Defendant PSMJ's authorization of Defendant Oser's actions constitute infringement of Plaintiff's rights in an unregistered trademark, *Metal Construction News*. Defendants have argued that Modern Trade's purported trademark is generic and thus, unenforceable. The court need not reach that issue for purposes of this opinion, *see Educational Tours, Inc. v. Hemisphere Travel, Inc.*, No. 04 C 0559, 2004 WL 887417 *2 (N.D. Ill. April 26, 2004), but shares Defendants' concern about enforceability. *See Technical Pub. Co. Divison of Dun-Donnelley Pub. Corp. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136, 1139 (7th Cir. 1984) (unregistered descriptive mark is protectable only if the owner establishes secondary meaning; a generic term "may never be protected as a trademark.")

## **CONCLUSION**

For the foregoing reasons, the court grants Defendant PSMJ's motion to dismiss [10] for lack of personal jurisdiction, grants Defendant Oser's motion to dismiss [28] for lack of personal jurisdiction, and denies both Defendants' motions to dismiss for failure to state a claim [13, 29] as moot. Plaintiff's motion to file its proposed first amended complaint [35] is denied.

ENTER:

Dated: August 19, 2011

_____
REBECCA R. PALLMEYER
United States District Judge